IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN WILLIAM KIRBY KELLEY,<br>   a/k/a "Carl"<br>   a/k/a "BotGod"<br><br>Defendant. | No. 1:20-cr-82  |

## STATEMENT OF FACTS

The United States and the Defendant, JOHN WILLIAM KIRBY KELLEY (hereinafter "the Defendant") agree that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

1. At all times relevant to the criminal information, the Defendant resided in the Commonwealth of Virginia.

2. Beginning in and around August 2018 and continuing until in and around April 2019, in the Eastern District of Virginia and elsewhere, the Defendant did knowingly and unlawfully combine, conspire, confederate, and agree with John Cameron Denton and other uncharged co-conspirators including, but not limited to, two foreign nationals (hereinafter "Co-Conspirator 1" and "Co-Conspirator 2") and a juvenile ("Co-Conspirator 3"), to transmit in interstate and foreign commerce any communication containing any threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c), all in violation of Title 18, United States Code, Section 371.

3. In and around 2018, the Defendant began hosting the #Graveyard IRC Channel on the Clearnet, which refers to the traditional World Wide Web that is accessible through Google, another search engine, and by typing in the domain. The Defendant used the moniker "carl" when in the IRC channel.

4. In and around 2018, the Defendant, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 began using the #Graveyard IRC Channel.

5. In and around October 2018, Denton joined the #Graveyard IRC Channel.

6. During the course of the conspiracy, the Defendant, Denton, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and other co-conspirators regularly coordinated swatting calls in the #Graveyard IRC Channel.

7. Co-Conspirator 1 and 2 were the most prolific swatters. Co-Conspirator 1 often asked other co-conspirators in the #Graveyard IRC Channel to propose swatting targets. Co-Conspirator 1 and 2 then chose from the options presented to them by the co-conspirators. Once Co-Conspirator 1 and 2 chose a target, the co-conspirators often used the Mumble application to listen to the swatting call in real time. Mumble is an open source Voice over Internet Protocol ("VoIP") communication tool that permits users to speak with and listen to each other.

8. The co-conspirators used VoIP technology when placing swatting calls to law enforcement. The co-conspirators used VoIP technology because it helped conceal the co-conspirators' true identity. The VoIP calls were made using Google Voice services associated with email accounts kaseybaby99.s@gmail.com, jhulxo1000@gmail.com, and other email addresses. In setting up these accounts, the co-conspirators used information not readily attributable to the co-conspirators. Google logged the calls placed by many of the accounts used for swatting calls. The accounts required an email and password to access the accounts, which

limited who could use the accounts. The co-conspirators also used voice changers to disguise their real voices.

9. The co-conspirators chose targets for different reasons. For instance, some co-conspirators proposed swatting individuals who were live streaming their activities. Some co-conspirators chose these individuals because they wanted to watch the law enforcement response to the threatening phone calls. Some co-conspirators also chose targets because they were motivated by racial animus.

10. The Defendant was aware that some co-conspirators chose individuals or locations to swat based on racial animus. In particular, the Defendant was aware that Denton, Co-Conspirator 2, and Co-Conspirator 3 expressed white supremacist views. The Defendant communicated with these individuals about their white supremacist views and used racial epithets.

11. The Defendant proposed locations and individuals to swat on many occasions. For instance, on or about November 4, 2018, the Defendant provided a YouTube link to his co-conspirators and suggested the link as the next swatting target.

12. In addition, on or about November 4, 2018, the Defendant asked Co-Conspirator 1 to swat Old Dominion University, which he was then attending. Old Dominion University is located in Norfolk, Virginia, within the Eastern District of Virginia.

13. On or about November 6, 2018, the Defendant again reminded co-conspirators that he wanted to swat Old Dominion University because he did not want to attend class.

14. Then, on or about November 29, 2018, at least one co-conspirator called law enforcement at Old Dominion University and claimed that they were armed with an AR-15 rifle and had placed multiple pipe bombs within buildings located on the Old Dominion University campus.

15. In response to the swatting call, Old Dominion University Police Department ("ODUPD") called in every law enforcement officer in the department. ODUPD contacted the Virginia State Police and the Norfolk Police Department to use their K9 officers. The Norfolk Police Department SWAT Team was put on standby to assist with the response to the threat. Old Dominion University closed and professors were not permitted to return to the school. Old Dominion University issued a shelter in place for the students on campus and students were not permitted to leave their dorms except to visit the dining facilities. Law enforcement subsequently searched and cleared every building on the Old Dominion University campus.

16. On or about December 4, 2018, at least one co-conspirator called law enforcement at Old Dominion University and claimed that they were located in Webb Center, which is located on campus. A co-conspirator stated that he possessed a firearm and intended to shoot everyone in Webb Center.

17. In response to this swatting call, ODUPD directed all on duty officers to the Webb Center. The officers then cleared the building. A thorough search of the building confirmed that there were no threats.

18. After these swatting calls, the Defendant continued to conspire with his co-conspirators and continued to join the IRC channel. Indeed, on or about December 5, 2018, the Defendant re-entered the IRC chat. The Defendant sought advice from Co-Conspirator 1 on moving the server and using a virtual private network in the Netherlands for operational security. Within a few hours, the Defendant was also working to identify new swatting targets for his co-conspirators.

19. After the Defendant informed his co-conspirators that law enforcement spoke to him, one of the conspirators moved the #Graveyard IRC Channel to the Onion Router, also known as "Tor," which is an open-source publicly available software that enables anonymous

4

activity on the internet. TOR operates on the part of the internet that cannot be accessed using traditional internet browsers. This area of the internet is sometimes called the "dark web" or "dark net."

20. Countless other swatting calls were committed in furtherance of this conspiracy, including, but not limited to, the swatting events detailed in the Criminal Information.

21. From in and around October 2018, the conspirators maintained a dark net site known as DoxBin. The site was a repository of the personally identifiable information of potential and past swatting targets. The conspirators indicated on DoxBin that an individual had been swatted by placing a gun symbol next to the name of the person swatted. The DoxBin website primarily targeted government officials, executives, journalists, and celebrities. The Defendant took part in doxxing individuals.

22. The acts taken by the Defendant in furtherance of the offense charged in this case, including the acts described above, were in all respects willful, knowing, and deliberate, and were not committed by mistake, accident, or other innocent reason.

23. This statement of facts includes those facts necessary to support the plea agreement between the Defendant and the United States. The Defendant acknowledges that the foregoing facts do not describe all of the Defendant's conduct relating to the offense charged in this case nor do they identify all of the persons with whom the Defendant may have engaged in illegal activities.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Carina A. Cuellar
Assistant United States Attorney

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, John William Kirby Kelley, and the United States, I hereby stipulate that the above statement of facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 03/23/2020

John William Kirby Kelley
Defendant

Defense Counsel Signature: I am counsel for the Defendant in this case. I have carefully reviewed the above statement of facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 3/24/2020

Cadence Mertz
Nathaniel Wenstrup
Counsels for the Defendant