IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-82 |
| | ) | |
| JOHN WILLIAM KIRBY KELLEY | ) | Hon. Liam O'Grady |
| a/k/a "Carl," | ) | |
| a/k/a "BotGod," | ) | Sentencing Date: March 15, 2021 |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

This supplemental position is limited to addressing the defendant's objections to the application of two guideline enhancements — specifically, § 3A1.1(a) (hate crime motivation) and § 3A1.2 (official victim).[1] As stated in its initial filing, the United States believes that the Probation Office has properly calculated the guideline range. The United States, however, felt it prudent to review the defendant's analysis prior to addressing the specifics of why these guidelines should apply in this case. For the reasons explained below, both guideline enhancements apply in this case because the defendant was a member of a conspiracy that targeted individuals based on their race, religion, and status as government officials. Therefore, the properly calculated guideline range is 51 to 60 months.

    A.    <u>The § 3A1.1(a) Enhancement (Hate Crime Motivation) Applies in this Case Because this Conspiracy Had as an Object Selecting Victims Based on Their Race and Religion</u>

Under § 3A1.1(a) of the Sentencing Guidelines, there is a three-level increase if the

---

[1] The United States does not agree with how the defendant characterized the conspiracy, his role in the conspiracy, and his conduct prior to the conspiracy. However, such disagreements are not uncommon and should be addressed at the sentencing hearing.

defendant "intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person." For subsection (a) to apply, the hate crime motivation must be proved beyond a reasonable doubt, even if the defendant is sentenced by the Court after pleading guilty or *nolo contendere*. See § 3A1.1(a); Application Note Background (explaining history of hate crime enhancement). The standard for proving hate crime motivation for purposes of the sentencing enhancement is no more burdensome than for proving statutory animus. *See United States v. Smith*, No. 08-10386, 2010 WL 510634, at *6 (9th Cir. Feb. 12, 2010) (unpublished) (holding that there is "no textual basis for applying a different standard to the sentencing than to the conviction for hate crimes"). In this case, the uncontested facts as set forth in the Criminal Information and Statement of Facts establish beyond a reasonable doubt that the conspirators selected victims, in part, because they were motivated by racial animus.

The defendant's arguments ignore the facts set forth in both the Criminal Information and Statement of Facts. Both documents detail that the conspirators chose victims for several reasons. The Criminal Information states: "It was part of the conspiracy that some members of the conspiracy were motivated by racial animus when they chose which individuals and locations to swat." Dkt No. 28 at pg. 4. The Criminal Information then details one such incident; the swatting of the Alfred Street Baptist Church, which is a predominantly African American church in Old Town Alexandria. *Id.* at 5.

Moreover, the Statement of Facts details that the defendant knew his conspirators chose targets based on racial animus. First, the Statement of Facts outlines that conspirators chose

targets for different reasons, including "[s]ome co-conspirators also chose targets because they were motivated by racial animus." Dkt No. 31 at pg. 3. It then goes one step further and states:

> The Defendant was aware that some co-conspirators chose individuals or locations to swat based on racial animus. In particular, the Defendant was aware that Denton, Co-Conspirator 2, and Co-Conspirator 3 expressed white supremacist views. The Defendant communicated with these individuals about their white supremacist views and use racial epithets.

*Id.*

Moreover, these statements are not made in a vacuum. As detailed in both the Criminal Information and Statement of Facts, the defendant is one of the most critical members of this conspiracy. The defendant hosted the Graveyard Internet Relay Chat (IRC) channel (the "Graveyard channel"). And, it is the Graveyard channel where the conspirators proposed targets, selected targets, and carried out swatting calls. By all accounts, the defendant was regularly present in the Graveyard channel. As detailed in the Statement of Facts and the United States' sentencing position paper, the defendant regularly proposed targets in the chatroom and worked to obtain video feeds, so he and his conspirators could watch law enforcement respond to swatting calls. Further, the chat logs establish that the defendant was very active in November and December 2018, which is when the conspirators swatted two predominantly African American churches and an Islamic Center.

The uncontested facts therefore establish that the defendant was a knowing and active member in a swatting conspiracy that targeted individuals and locations based on race and religion. In addition, the defendant was deeply familiar with two of the conspirators targeting victims for racial and religious reasons. First, the defendant initially met Denton while chatting

with him in a white supremacist chatroom on Discord. The defendant was familiar with Denton's role in Atomwaffen Division. Indeed, Denton trusted the defendant enough to invite him to the Siege IRC chat, which was devoted to Denton's white supremacist views. Second, the defendant traveled to West Virginia to meet with Co-Conspirator 3, who targeted the Alfred Street Baptist church through the Graveyard channel. The defendant therefore knowingly conspired with individuals who targeted individuals and locations for racial and religious reasons.

In addition, the defendant regularly conversed with his co-conspirators by using racial epithets and discussing white nationalist views. *See generally* Attachment A. While such speech is protected under the Constitution, this speech does prove that the defendant shared the views of his co-conspirators and communicated in the same language. Indeed, in one exchange the defendant went so far as to express his desire to "poster" a location in Northern Virginia where the conspirators believed George Lincoln Rockwell, who was the leader of the American Nazi party, was shot and killed. *See* Attachment A at pgs 8-9. Based on law enforcement's understanding, the reference to "poster" here refers to the practice of spreading white supremacist messages through propaganda posters. Again, while this is protected speech, this exchange shows that the defendant is interacting with Co-Conspirator 3, who admitted to choosing targets for racial and religious reasons, about their shared white supremacist views.

Based on the uncontroverted facts, the defendant cannot argue that he did not "select" any victim for racial reasons. In *United States v. Woodlee*, 136 F.3d 1399, 1414 (10th Cir. 1998), one defendant, who pled guilty to a civil rights conspiracy, argued that he did not "select" any victim and that the hate crime enhancement was therefore inapplicable. The evidence

4

showed that he did not participate in any racial taunting of the victims and only joined the other defendants towards the end of the offense. Id. The Tenth Circuit rejected this claim as "inconceivable." Id. "The only logical reason to chase and shoot at these men was their race. We do not believe simply because the other defendants made the initial decision whom to taunt [that] Mr. Kinslow is relieved of his choice to join in the melee." Id. So too here. The defendant continued actively participating in a conspiracy that included targeting individuals based on their race and religion. The defendant was close to two of the conspirators who chose targets for these reasons and generally indicated that he sympathized with their views. He therefore cannot escape the application of the hate crime enhancement when he chose to host an IRC channel, which was, in part, devoted to targeting minorities.

> B. The § 3A1.2(a) Enhancement (Official Victim) Applies in this Case Because the Conspirators Targeted Government Officials and the Criminal Information Makes Clear that the Conspirators were Motivated by the Status of Government Officials When They Swatted Such Officials

Under § 3A1.2(a) of the Sentencing Guidelines, there is a three-level increase if the victim was "a government officer or employee" and "the offense of conviction was motivated by such status." Further, should the facts support the application of § 3A1.2(a) then a six-level increase is appropriate because the offense of conviction is from Chapter Two, Part A (Offenses Against Persons). Here, the facts establish beyond a preponderance of the evidence that the conspirators targeted government officials to swat and did swat a United States Cabinet member. Once again, the defendant ignores the facts set forth in the Criminal Information and Statement of Facts to avoid the application of a guideline provision and to underplay the seriousness of this conspiracy.

First, as set forth in the Criminal Information and Statement of Facts, the conspirators in

this case targeted government officials. The Criminal Information states the following:

> From in and around October 2018, the conspirators maintained a dark net site known as DoxBin. The site was a repository of personally identifiable information of potential and past swatting targets. The DoxBin website primarily targeted government officials, executives, journalists, and celebrities.

Dkt No. 28 at pg. 6.

The Statement of Facts then details that the defendant was aware of DoxBin because he "took part in doxing individuals." Dkt No. 31 at pg. 5. This is significant because the facts also establish that the conspirators often placed a gun next to an individual's name on DoxBin when they successfully targeted the individual. Thus, the uncontroverted facts establish that the conspirators targeted government officials to swat.

Second, it is uncontroverted that the co-conspirators swatted a sitting United States Cabinet member. Again, this event is included in the Criminal Information. Dkt. No. 28 at pg.6. The facts therefore establish that (1) a government official is a victim and (2) the conspirators actively doxed and sought to swat government officials. However, the defendant appears to be arguing to this Court that these sophisticated conspirators, who actively sought to swat government officials, chose the sitting Cabinet member's home to swat by accident. This beggars belief. The only conclusion supported by the evidence is that the conspirators successfully obtained the Cabinet member's home address and targeted the Cabinet member because of their official position.

Finally, the defendant argues that the evidence does not establish that he personally knew or chose the Cabinet member to swat. Unlike § 3A1.1(a), however, this provision does not include language requiring proof that the defendant chose the government official to swat. Here, there is no doubt that the defendant was a member of a conspiracy that targeted

government officials and that he knew his fellow conspirators targeted government officials.

## CONCLUSION

For the reasons set forth above, the United States agrees with the Probation Office that the hate crime and official victim enhancements apply in this case. Thus, the properly calculated guideline range is 51 to 60 months of incarceration.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:       /s/
Carina A. Cuellar
Assistant United States Attorney