IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **FILED UNDER SEAL** |
| v. ) | |
| ) | No. 1:20-cr-82 |
| JOHN WILLIAM KIRBY KELLEY, ) | |
| Defendant. ) | |

### MOTION FOR EARLY TERMINATION OF SUPERVISION

John William Kirby Kelley has completed two-thirds of his supervised release term without incident and now moves for early termination of supervision. Mr. Kelley has progressed through his post-sentence transition with remarkable consistency, especially for someone of his young age ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Kelley has complied with the conditions of his supervision without incident. He has maintained an apartment. He has held the same job for nearly two years, working for an employer who greatly values him. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In light of his success and to encourage and allow him to spread his wings further, Mr. Kelley respectfully moves this Court to grant him early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1).

In further support of this Motion, Mr. Kelley states as follows:

1. Mr. Kelley was arrested on January 10, 2020, for his role in a swatting conspiracy. The conspiracy existed from about August 2018 until about April 2019.

After Mr. Kelley's arrest almost a year later, the government sought detention, which was granted. Mr. Kelley was 19 years old at the time. Thereafter Mr. Kelley was held in custody at the Alexandria Adult Detention Center. Dkt. Nos. 8, 10.

2. As the Court no doubt vividly remembers, two months later the Covid pandemic swept the globe, wreaking havoc and leading people to lockdown in their homes. The effects of the pandemic were more pronounced and even more terrifying for those, like Mr. Kelley, in communal settings and where control over their environment was in the hands of others. *See, e.g.*, *United States v. Brown*, 78 F.4th 122, 132 (4th Cir. 2023) (recognizing that the added stressors of the Covid-19 pandemic made "incarceration harsher and more punitive than would otherwise have been the case." (internal quotation marks and citation omitted)).

3. On July 21, 2020, Mr. Kelley pled guilty to one count of conspiracy in violation of 18 U.S.C. § 371. Dkt. Nos. 28-32. The Honorable Liam O'Grady later sentenced Mr. Kelley to serve 33 months imprisonment followed by 3 years of supervised release. Dkt. No. 52.

4. Mr. Kelley was released from the Bureau of Prisons to a halfway house in March 2022. On May 13, 2022, he was officially released by the BOP and started his three-year term of supervision.

5. In the two years since, Mr. Kelley has been in compliance with the conditions of supervision and has incurred no violations.[1] He has held the same job since shortly after his release. He lives on his own. His restitution obligation has been paid off. Notwithstanding her position on early termination, Mr. Kelley's probation officer advised undersigned counsel that Mr. Kelley has been compliant and made positive changes during his time on supervision.

6. ███████████████████████████████████
███████████████████████████████████████
██ █████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

[1] Undersigned counsel has conferred with Mr. Kelley's Probation Officer ███ ████ and the government regarding this Motion. ████████ has said that she opposes early termination because ████████████████████████████ nd also because the Probation Office is generally opposing all requests for early termination until at least June 2024. After speaking with ████████, the government echoed her concern █████████████████████████████████████████
████████████████████████████████████.

[2] ████████████████████████████████████████


████████████████████████████████████████

████████████████████████████████████████

7.      Shortly after his release, Mr. Kelley successfully found a job working at the ████████████ in Falls Church.  He has now worked there for nearly two years.  At the store, he progressed quickly from basic custodial and maintenance roles to primarily sales along with managerial duties, such as ensuring daily reports are completed and receiving supply shipments.  In the attached letter, Mr. Kelley's employer confirms Mr. Kelley's consistent performance at work and his growing responsibilities over the past two years.  *See* Letter from ████████, attached as Exhibit A.  *See also* Photo, attached as Exhibit B.

8.      In addition to entrusting Mr. Kelley with more responsibility, Mr. Kelley's employer has been an important source of support outside of work as well.  Mr. Kelley found permanent housing in short order after his release.  When Mr. Kelley has maintenance issues in his apartment for which he needs a little help, he reports that he can call Mr. ████, who is handy at fixing things.

9.      ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████

10. Mr. Kelley has his own self-interest in keeping in place the supports he has built up to help him succeed. Last year, on his own initiative, Mr. Kelley asked his Probation Officer for help identifying a mentor who could be a sounding board for advice and help him when he confronts challenging situations. Probation reached out to undersigned counsel for assistance identifying a potential mentor. As a result, a former client of the Federal Public Defender's Office who is now on low-risk supervision agreed to participate as a mentor for Mr. Kelley, with approval of both men's probation officers. Mr. Kelley and his mentor speak weekly with plans to continue their informal relationship indefinitely. Mr. Kelley's mentor reports to counsel that, among the various topics they discuss, ███████████████████████████████████████████████████████████████████████████████████████████████████████.

11. This informal mentor relationship is striking evidence that Mr. Kelley, at age 23, recognizes the importance of positive social relationships and will take the initiative to get help when he needs it, even when there is no established blueprint for doing so. Between Mr. Kelley's mentor-mentee relationship and his engagement in the ████████████████████████████, it is clear Mr. Kelley is making great efforts to ensure his own success—beyond what the Probation Office can provide him.

12. Pursuant to 18 U.S.C. § 3583(e)(1), this Court may, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), terminate supervision after the expiration of one year of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

5

13. Supervision is a "substantial[] restrict[ion]" on a person's liberty. *See Gall v. United States*, 552 U.S. 38, 48-49 (2007) (citing examples of restrictions). Supervised release requires regular reporting and check-ins with the probation officer assigned to the case. It requires the probationer to make his home available for inspection by the officer. It requires advance notice to the officer before moving or changing jobs. In Mr. Kelley's case, supervision also requires that any computer usage be subject to monitoring software and review by the probation officer. Mr. Kelley is skilled with computers and could potentially find work in that field. The monitoring restriction requires potential employers to consider whether they wish to permit monitoring software installed on their device in service of hiring Mr. Kelley, a factor that could inhibit Mr. Kelley from eventually finding more skilled work. Further, Mr. Kelley must bear the cost of the monitoring software, which costs him $80 a month, a burden for someone earning ▮▮▮▮▮▮▮▮▮▮▮▮.

14. Early termination is appropriate in Mr. Kelley's case in light of the two years he has passed on supervision without incident and the impressive progress this young man has made in building a life on his own. It is particularly appropriate where Mr. Kelley has demonstrated initiative in seeking out help when he needs it and ensuring he has positive supports in place for himself. Further, Mr. Kelley will continue ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when supervision terminates, whenever that occurs.

15. Mr. Kelley is still a very young man. The bulk of his criminal conduct occurred before and just after he turned 18, and it ceased a year before his arrest in

this case. Mr. Kelley has progressed far beyond the youth he was at the time these events occurred, finding a home, a job, and installing a support network. Plenty of returning citizens with far more life experience than Mr. Kelley struggle to achieve these same goals after incarceration—it is no easy task.

16. By his actions, Mr. Kelley has demonstrated his commitment towards rehabilitation and living a law-abiding life. Beyond that, Mr. Kelley's initiative shows that he plans not just to avoid recidivating, but to rise up and succeed. Supervision has served its purpose in overseeing his transition back into this community for two years since his release from BOP. It is respectfully submitted that further supervision is not necessary here, nor the best use of judicial resources.

Accordingly, Mr. Kelley respectfully requests that this Court terminate his term of supervised release.

Respectfully submitted,

JOHN WILLIAM KIRBY KELLEY

By counsel,
Geremy C. Kamens
Federal Public Defender

By: /s/ Cadence Mertz
Cadence A. Mertz
Va. Bar No. 89750
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703)600-0840
(703)600-0880 (fax)
Cadence_Mertz@fd.org
*Counsel to Mr. Kelley*

# EXHIBIT A



May 1, 2024

To Whom It May Concern

RE: John Kelly

I am writing this letter in regards to my employee and friend John Kelly

John has worked for me for over two years now. He shows up every day and works hard. He is in charge of caretaking for all our birds; feeding, cleaning up after them, handling them. In addition, he is my go to guy for anything else that pops up day to day

Over these two years I have watched him grow as a responsible human being. He handles the regular and irregular duties without complaint. In addition, his interpersonal skills have grown. He regularly assists our customers and I get compliments about him all the time.

I am proud of John and all that he has accomplished in his time here.

If you have any questions, please call me at ▮

Sincerely,

▮
Owner

# EXHIBIT B

